David LOCKWOOD, Appellant

v.

The STATE of Texas, Appellee.

No. 10–06–00251–CR.

Court of Appeals of Texas, Waco.

Sept. 19, 2007.

B.F. Summers, Law Office of B.F. Summers, Cedar Hill, for appellant.

Joe F. Grubbs, Ellis County Dist. Atty., Waxahachie, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted David Lockwood of criminal mischief by damaging a city water meter and assessed his punishment at 270 days' confinement and a $1,000 fine. Lockwood contends in two points that: (1) the evidence is legally and factually insufficient to prove (a) he is the person who damaged the water meter or (b) he received the economic benefit of a public water supply; and (2) the court abused its discretion by charging the jury on the statutory presumption provided by section 28.03(c) of the Penal Code because (a) the State failed to prove that he received the economic benefit of a public water supply and (b) the court failed to instruct the jury that the State had to prove the facts giving rise to the presumption beyond a reasonable doubt. We will affirm.

### Background

Lockwood applied for water service from the City of Red Oak in January 2004 for his home. The City cut off his water service in April for non-payment. Tony Stone, an employee of the City's Public Works Department, received a work order the following January to investigate a possible leak at Christy Pogue's house, which was next door to Lockwood's. Stone found that someone had bypassed the meter at Pogue's house and tapped into the city water supply with a water hose, which was the source of the leak. The other end of this water hose was connected to a faucet at Lockwood's house. Stone removed both water meters from the respective premises. On cross-examination, he explained that Lockwood's home was receiving water via the hose which had been used to bypass the meter at Pogue's house.

Although it is not entirely clear from the record, it appears that the water for Pogue's house was not cut off until the hose was found running from her meter to Lockwood's house. Stone testified that the angle stops for the water meters at both houses had been cut in an apparent effort to bypass the water meters. Public Works Director Charles Bertrand testified that the "ears" on both meters, through which "barrel locks" had been placed to prevent access to city water, had been broken as well.

A Red Oak police officer who investigated the next day confirmed that the hose ran to Lockwood's house and that both houses were receiving city water without paying for it. A code enforcement officer similarly testified that both houses were receiving city water but had "bypassed the normal system."

Another public works employee returned to Lockwood's house three months later and found that there was a leak around the meter box. Although Stone had removed the water meter, a length of pipe had been inserted to connect the water service line for Lockwood's house to the city water line without a meter.

### Legal and Factual Sufficiency

Lockwood contends in his first issue that the evidence is legally and factually insufficient to prove that he damaged a water meter or received the economic benefit of a public water supply.

In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Sells v. State,* 121 S.W.3d 748, 753–54 (Tex.Crim.App. 2003).

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006).

"For both legal and factual insufficiency challenges, we review the evidence against 'the hypothetically correct jury charge for the case.'" *Erskine v. State*, 191 S.W.3d 374, 377 (Tex.App.-Waco 2006, no pet.) (quoting *Fuller v. State*, 73 S.W.3d 250, 252 (Tex.Crim.App.2002)) (footnote omitted); *accord Gearhart v. State*, 122 S.W.3d 459, 466 (Tex.App.-Corpus Christi 2003, pet. ref'd); *Villani v. State*, 116 S.W.3d 297, 307 (Tex.App.-Houston [14th Dist.] 2003, pet. ref'd). "The hypothetically correct jury charge is authorized by the indictment or information and encompasses [the] statutory elements of the offense." *Erskine*, 191 S.W.3d at 377 (citing *Gharbi v. State*, 131 S.W.3d 481, 482–83 (Tex. Crim.App.2003)) (other citations omitted); *accord Gearhart*, 122 S.W.3d at 466; *Villani*, 116 S.W.3d at 307.

As amended,[1] the information alleges in pertinent part that, on the occasion in question, Lockwood:

> did then and there intentionally or knowingly damage or destroy tangible property, to-wit: a water meter, without the effective consent of Charles Bertrand, the owner of said property, and did thereby cause pecuniary loss of less than $1,500 to the said owner, and the defendant did then and there intentionally or knowingly cause, in whole or in part, impairment or interruption of public water supply.

*See* TEX. PEN.CODE ANN. § 28.03(a)(1), (b)(3)(B) (Vernon Supp.2006).

The jury charge largely corresponded to the allegations of the information but also included instructions concerning the statutory presumption provided by section 28.03(c) of the Penal Code, which states:

> For the purposes of this section, it shall be presumed that a person who is receiving the economic benefit of public communications, public water, gas, or power supply, has knowingly tampered with the tangible property of the owner if the communication or supply has been:
>
> (1) diverted from passing through a metering device; or
>
> (2) prevented from being correctly registered by a metering device; or
>
> (3) activated by any device installed to obtain public communications, public water, gas, or power supply without a metering device.

*Id.* § 28.03(c) (Vernon Supp.2006).

The statutory presumption provided by section 28.03(c) applies when there is an allegation that the defendant "has knowingly tampered with the tangible property of the owner." *Id.; see also* TEX. PEN.CODE ANN. § 28.03(a)(2) (Vernon Supp.2006) (person commits offense if he "intentionally or knowingly tampers with the tangible property of the owner and causes pecuniary loss or substantial inconvenience").

Here, the State did not allege that Lockwood "tampered" with the water meter under subsection (a)(2). Rather, the State alleged that he "damaged or destroyed" the water meter under subsection (a)(1). Thus, the statutory presumption of subsection (c) does not apply, and a hypothetically correct charge would not have instructed the jury on this presumption. *See Gharbi*, 131 S.W.3d at 482–83; *Erskine*,

---

1. The information was amended to change the name of the complainant.

191 S.W.3d at 377; *Gearhart,* 122 S.W.3d at 466; *Villani,* 116 S.W.3d at 307.

Although the State alleged that Lockwood had caused "pecuniary loss of less than $1,500," the statute under which he was charged requires that the State show "impairment or interruption of any public water supply . . . regardless of the amount of the pecuniary loss," and a hypothetically correct charge would not have required the jury to make a finding regarding any pecuniary loss that had been suffered. *Id.; see also* Tex. Pen.Code Ann. § 28.03(b)(3)(B).

Therefore, we need not address the second part of Lockwood's evidentiary sufficiency challenge which questions whether the State proved that he received the economic benefit of a public water supply—an issue arising under the statutory presumption, which does not apply in this case. *See* Tex. Pen.Code Ann. § 28.03(c).

■ The first part of Lockwood's evidentiary sufficiency challenge questions whether the State offered legally and factually sufficient evidence to prove that he is the person who damaged the water meter. Thus, Lockwood challenges the legal and factual sufficiency of the evidence to prove identity.

Identity may be proved by direct or circumstantial evidence. In fact, identity may be proven by inferences. When there is no direct evidence of the perpetrator's identity elicited from trial witnesses, no formalized procedure is required for the State to prove the identity of the accused. Proof by circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence. For the purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative.

*Clark v. State,* 47 S.W.3d 211, 214 (Tex. App.-Beaumont 2001, no pet.) (quoting *Roberson v. State,* 16 S.W.3d 156, 167 (Tex. App.-Austin 2000, pet. ref'd)).

Here, there is no direct evidence to establish Lockwood's identity as the person who damaged the water meter. However, there are four categories of circumstantial evidence which tend to establish his identity as the perpetrator.

First, Lockwood was the primary adult occupant of the premises. His co-defendant Christy Pogue testified that he lived in the home with his girlfriend Stella and Stella's three children. In addition, Lockwood is the person who applied with the city for water services for that residence. The jury could infer from Lockwood's exercise of control over the premises that he was the person who damaged the water meter which controlled the city water for that residence.

■ Second, the municipal water services for the residence had been cut off. Thus, Lockwood had a motive to obtain a source of water for himself and the other four occupants of the home. Evidence of motive is generally relevant and admissible to prove that a defendant committed the offense alleged. *See Crane v. State,* 786 S.W.2d 338, 349–50 (Tex.Crim.App.1990); *Reedy v. State,* 214 S.W.3d 567, 583 (Tex. App.-Austin 2006, pet. ref'd); *Keen v. State,* 85 S.W.3d 405, 413–14 (Tex.App.-Tyler 2002, pet. ref'd).

Third, Lockwood and his co-occupants were in possession of the "proceeds" of the crime, namely, city water. *See Poncio v. State,* 185 S.W.3d 904, 905 (Tex.Crim.App. 2006) (unexplained possession of recently stolen property permits an inference that the defendant is the one who committed the offense).

And finally, the pipe that was discovered three months later connecting the water

service line for Lockwood's house to the city water line without a meter constitutes evidence of a similar extraneous offense, which is probative of identity. *See* Tex.R. Evid. 404(b); *Page v. State*, 213 S.W.3d 332, 336 (Tex.Crim.App.2006).

Therefore, we hold that the evidence, when viewed in the light most favorable to the verdict, is such that a rational juror could have found beyond a reasonable doubt that Lockwood is the person who damaged the water meter.

Lockwood presents two primary arguments to support his contention that the evidence is factually insufficient. First, he notes that no witness testified that he or she personally saw Lockwood damage the water meter. And second, he refers to the testimony of Lockwood's co-defendant Pogue identifying her boyfriend as the person whom she "assumed" to have committed the offense.

As discussed above, the State may prove identity by circumstantial evidence, and we have already discussed the various circumstances from which the jury could infer that Lockwood damaged the water meter. The absence of "eyewitness testimony" does not render the evidence supporting the verdict "so weak" that the verdict is "clearly wrong and manifestly unjust." *See Watson*, 204 S.W.3d. at 414.

Pogue did identify her boyfriend as the person whom she believed to have committed the offense. Her testimony thus presented the jury with a credibility issue to resolve. The jury is "the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex.Crim.App.2002). We must defer to the jury in its resolution of such issues. *See id.; May v. State*, 139 S.W.3d 93, 99 (Tex.App.-Texarkana 2004, pet. ref'd); *Parker v. State*, 119 S.W.3d 350, 355 (Tex.App.-Waco 2003, pet. ref'd). Thus, we cannot say that the conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d. at 414–15; *May*, 139 S.W.3d at 99.

Because the evidence is legally and factually sufficient, we overrule Lockwood's first point.

**Jury Charge**

Lockwood contends in his second point that the court abused its discretion by charging the jury on the statutory presumption provided by section 28.03(c) because the State failed to prove that he received the economic benefit of a public water supply and because the court failed to instruct the jury that the State had to prove the facts giving rise to the presumption beyond a reasonable doubt. We have already determined that the jury should not have been charged on this statutory presumption, albeit for a different reason than those urged by Lockwood. *Cf. Pena v. State*, 191 S.W.3d 133, 136 (Tex.Crim.App.2006) ("appellate courts are free to review 'unassigned error' ").

However, because Lockwood did not object to the charge at trial, he may not obtain reversal unless this error caused him to suffer egregious harm. *Ex parte Smith*, 185 S.W.3d 455, 463–64 (Tex.Crim.App.2006); *Hanson v. State*, 180 S.W.3d 726, 728 (Tex.App.-Waco 2005, no pet.).

[J]ury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. In examining the record to determine whether jury-charge error is egregious, the reviewing court should consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information re-

vealed by the record of the trial as a whole.

*Sanchez v. State,* 209 S.W.3d 117, 121 (Tex. Crim.App.2006) (citing *Ngo v. State,* 175 S.W.3d 738, 750 & n. 48 (Tex.Crim.App. 2005); *Almanza v. State,* 686 S.W.2d 157, 171–72 (Tex.Crim.App.1985) (op. on reh'g)) (other citations omitted).

Here, the charge required the jurors to find beyond a reasonable doubt that Lockwood had damaged or destroyed a water meter and that this caused impairment or interruption of the public water supply (and a pecuniary loss of less than $1,500). The statutory presumption of section 28.03(c) is aimed primarily at the issue of whether the defendant acted "knowingly" or "tampered" with a water meter, the latter of which was not an element in Lockwood's case. The jurors had ample evidence from which they could determine that Lockwood acted knowingly, including evidence that he controlled the premises, evidence of motive, evidence that the hose unlawfully connected to his water system was plainly visible, and evidence that his house had received public water via unlawful connections on at least two occasions. In closing argument, Lockwood's counsel focused on the absence of direct evidence to prove his involvement. Counsel made only one passing reference to purported confusion among the witnesses about which house was receiving water from an unlawful connection. One of the prosecutors did mention the presumption in closing argument but did not devote a significant amount of argument to it.

The testimony of several witnesses regarding the hose running from Pogue's damaged water meter to Lockwood's house constitutes overwhelming evidence that Lockwood was "receiving the economic benefit of public water supply." Therefore, we hold that he did not suffer egregious harm because of the error in the court's charge. Accordingly, we overrule his second point and affirm the judgment.

Chief Justice GRAY concurs in the judgment only. The discussion in the opinion bears no resemblance to the issues as presented in the briefs. On the issues briefed, I concur only with the Court's judgment affirming the trial court's judgment, without a separate opinion.